PEDERSEN *v.* PAGENSTECHER.

(*District Court, S. D. New York.* November 15, 1887.)

1. CHARTER-PARTY—STIPULATION AS TO TIME OF SAILING—RESULT OF NON-COMPLIANCE—RIGHT TO REJECT.
  A stipulation in a charter as to the time of sailing of an absent vessel, to be furnished to the charterer, is a condition precedent, which, if not fulfilled, entitles the charterer to reject the vessel. The vessel under such a stipulation takes upon herself the risks of all causes that may prevent a compliance with the condition.
2. SAME—SAILING—WHAT CONSTITUTES.
  A clause in the charter of the bark A. described her as "now at Bremen, guarantied to sail on or before December 10th." On the fourth of December, her general cargo being in, she was moved, by order of the harbor-master, close to the dock-gate, after which she took on balance of crew and provisions. On the 15th she went out to the roadstead, and sailed on the 20th. *Held,* that her move on the 4th was not a constructive sailing.

*Biddle & Ward,* for libelant.
*Wing, Shoudy & Putnam,* for respondents.

BROWN, J. The libelant sues to recover damages for alleged breach of charter-party in not accepting the Danish bark Atalanta when tendered at New York to be loaded. The charter describes her as "now at Bremen, loading for Philadelphia, guarantied to sail on or before December 10, 1886." The respondents refused to accept her because, as they allege, she did not sail from Bremen until after December 10th.

The stipulation as to time of sailing was a condition precedent, which, if not fulfilled, entitled the respondents to reject the vessel. It is not a question of fault or reasonable excuse for not sailing within the time provided. The vessel, under such a stipulation, takes upon herself the risks of all causes that may prevent a compliance with the condition. *Davidson* v. *Von Lingen,* 113 U. S. 40, 49, 5 Sup. Ct. Rep. 346, and cases there cited; *Hore* v. *Whitmore,* Cowp. 784; *Croockewit* v. *Fletcher,* 1 Hurl. & N. 893; *Weisser* v. *Maitland,* 3 Sandf. 318.

The proof shows that in December the vessel was loading within the dock at Bremen. On the fourth December, her general cargo being all, or nearly all, on board, she was ordered by the harbor-master to remove from that part of the dock where she was lying to some other berth. She was thereupon moved as near to the dock gate as she could get, and then took on board the balance of her crew and provisions for the voy-

age. ; The respondents claim that on the sixth of December she was entirely ready for sea. She did not leave her last berth within the dock, however, nor go out of the dock-gate, until the 15th, when she went into the roadstead outside, where she was detained by contrary winds until the twentieth of December, when she went to sea.

I do not think the whole evidence fairly sustains the claim that she was prepared to sail by the sixth of December. The Friedlander sailed from the same dock on the 11th. The mate of the Atalanta testifies that the Friedlander sailed on "one of the days I was getting ready with her cargo—when we were taking in the last of her cargo." And if the Atalanta was in fact ready to sail on the 6th, no reason appears why she did not sail. The mate's testimony indicates the contrary.

It has been held that similar warranties are complied with if the ship breaks ground and accomplishes some part of the journey, however short, with the *bona fide* intent of prosecuting so much of the voyage, though the master knew that he would be obliged shortly to come to anchor because of contrary winds, and made the start in order to comply with the warranty. *Cochran* v. *Fisher*, 4 Tyrw. 424, 5 Tyrw. 496; *The Francesco Curro*, 4 Phila. Wkly. Notes Cas. 415; *Pittegrew* v. *Pringle*, 3 Barn. & Adol. 514. In the case last cited Lord TENTERDEN says:

"The general principle of the decisions is this, that if a ship quits her moorings and removes, though only to a short distance, being perfectly ready to proceed upon her voyage, and is by some subsequent occurrence detained, that is nevertheless a sailing; but it is otherwise if at the time when she quits her moorings and hoists her sails, she is not in a condition for completing her sea voyage."

The facts of the present case do not bring the Atalanta within the principle of these decisions. The change of berth on the 4th, although it brought her a few lengths nearer the dock-gate, through which she must pass, was not a movement made in the prosecution of any part of her voyage. She was not then ready to sail; neither her crew nor necessary provisions were on board. She changed her berth by the requirement of the harbor-master, and was obliged to stop at some other place within the dock, because she was not ready to proceed to sea. When she was afterwards got ready, whether before or after the 10th, she did not prosecute any part of the voyage until the 15th. Her previous change of place was merely in the preliminary preparation for the voyage, and cannot be held to be a constructive sailing prior to the 10th, so as to defeat the plain intention of her charter. *Pittegrew* v. *Pringle*, 3 Barn. & Adol. 514; *Graham* v. *Barras*, 5 Barn. & Adol. 1011; *Ridsdale* v. *Newnham*, 3 Maule & S. 456; *Nelson* v. *Salvador*, 1 Moody & M. 309.

The libel must therefore be dismissed, with costs.